UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

SOCIÉTÉ D'ASSURANCE DE L'EST SPRL
AND CABINET MAÎTRE SYLVANUS MUSHI
BONANE,                                    10 Civ. 4754 (JGK)

                    Plaintiffs,            MEMORANDUM OPINION
                                           AND ORDER

          - against -

CITIGROUP INC., CITIBANK, N.A., AND
CITIGROUP CONGO S.A.R.L.,

                    Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiffs, Société d'Assurance de l'Est SPRL

("Assurest") and Cabinet Maître Sylvanus Mushi Bonane ("Bonane")

bring this action for breach of contract against defendants

Citigroup Inc. ("Citigroup"), Citibank, N.A. ("Citibank"), and

Citigroup Congo S.A.R.L. ("Citigroup Congo").  The defendants

have moved to dismiss the complaint pursuant to Federal Rule of

Civil Procedure 12(b)(1), for lack of subject matter

jurisdiction; Federal Rule of Civil Procedure 12(b)(2), for lack

of personal jurisdiction as against defendant Citigroup Congo;

Federal Rule of Civil Procedure 12(b)(6), for failure to state a

claim as against defendants Citigroup and Citibank; and the

doctrine of forum non conveniens.

**I.**

Plaintiff Assurest is an insurance company organized and existing under the laws of the Democratic Republic of the Congo ("DR-Congo").  Second Amended Complaint ("Compl.") ¶ 12. Plaintiff Bonane is a law firm whose principal place of business is in the DR-Congo.  Compl. ¶ 13.  Defendant Citigroup is a corporation organized under the laws of Delaware and with its principal place of business in New York.  Compl. ¶ 11(a). Defendant Citibank is a nationally chartered bank, and Citigroup's principal subsidiary; it has its principal place of business in New York.  Compl. ¶ 11(b).  Defendant Citigroup Congo is a wholly owned subsidiary of Citibank, organized and operating in the DR-Congo.  Compl. ¶ 11(c).

In broad terms, the Second Amended Complaint (the "Complaint") alleges that the defendants, acting in concert, improperly removed $588,727 from the Citigroup Congo account of plaintiff Assurest and withheld $341,470 from the Citigroup Congo account of plaintiff Bonane, in breach of the plaintiffs' contracts with the defendants.  Compl. ¶¶ 53, 59.  While most of the funds withheld from Bonane's account were ultimately paid, the funds removed from Assurest's account remain missing. Compl. ¶¶ 65-67.

According to the Complaint, Sylvanus Mushi Bonane ("Mr. Bonane"), the principal of Bonane, instituted an action through plaintiff Bonane against the Office des Douanes et Accises ("OFIDA"), an agency of the DR-Congo, on behalf of a client, Estagri SPRL ("Estagri"). Compl. ¶¶ 7, 57. Judgment was rendered in the action in favor of Estagri, but payment was not made by OFIDA. Compl. ¶ 8. Thereafter, Estagri forced Defendant Citigroup Congo to turn over payment of the judgment amount by means of a writ of attachment, levied on an account held by OFIDA. Compl. ¶ 8.

According to the Complaint, on June 27, 2007, the defendants notified Mr. Bonane that the accounts of Bonane and Assurest would be closed on July 13, 2007. Compl. ¶ 41. On June 29, 2007, $599,965 was debited from Assurest's account. Compl. ¶ 45. On July 23, 2007, the plaintiffs were notified that each of their accounts was subject to attachment pursuant to a judgment ("RC 96.136") issued in an action brought by OFIDA against Citigroup Congo, in which neither of the plaintiffs was a party, that declared the previous attachment by Estagri invalid. Compl. ¶¶ 47, 56. On August 3, 2007, the defendants and OFIDA entered into an agreement to attempt jointly to enforce the judgment against Estagri, Assurest and "all of their associates' accounts." Compl. ¶ 58 & Ex. E.

3

On August 6, 2007, $599,895 was debited from Assurest's account, the same amount was credited, perhaps twice, and $588,727 was finally debited.  Compl. ¶¶ 50-53.  All of these transactions took place despite the attachment on the account, and without Assurest's authorization.  Compl. ¶¶ 50-53.  The following day, the defendants refused a request by Mr. Bonane to withdraw the balance of the Bonane account, in the amount of $341,470.  Compl. ¶ 59.

On August 7, 2008, the Supreme Court of Justice of the DR-Congo found that the judge who had rendered RC 96.136 had committed fraud by declaring Estagri's prior attachment invalid.  Compl. ¶ 63.  On September 23, 2008, Citigroup Congo agreed to pay Bonane $341,300 by reactivating its account.  Compl. ¶ 65.  The defendants also agreed to restore the funds removed from the Assurest account, but the funds have not been restored.  Compl. ¶ 67.  On April 17, 2009, the defendants closed the plaintiffs' accounts.  Compl. ¶ 68.  From July 23, 2007, through the date the accounts were closed, the defendants continued to charge the plaintiffs fees for administering their accounts.  Compl. ¶ 62.

On June 17, 2010, the plaintiffs brought suit in this Court.  The defendants moved to dismiss the complaint and the plaintiffs filed an amended complaint on September 7, 2010.  The Court denied the motion to dismiss as moot and granted the plaintiffs the opportunity to file a second amended complaint,

4

but warned that if the second amended complaint were dismissed,
it would be dismissed with prejudice.  See Order dated September
20, 2010.  The second amended complaint that is the subject of
this motion to dismiss was filed on October 1, 2010.

## II.

In defending a motion to dismiss for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil Procedure
12(b)(1), the plaintiff bears the burden of proving the Court's
jurisdiction by a preponderance of the evidence.  Makarova v.
United States, 201 F.3d 110, 113 (2d Cir. 2000).  In considering
such a motion, the Court generally must accept the material
factual allegations in the complaint as true.  See J.S. ex rel.
N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).
The Court does not, however, draw all reasonable inferences in
the plaintiff's favor.  Id.; Graubart v. Jazz Images, Inc., No.
02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).
Indeed, where jurisdictional facts are disputed, the Court has
the power and the obligation to consider matters outside the
pleadings, such as affidavits, documents, and testimony, to
determine whether jurisdiction exists.  See Anglo-Iberia
Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero), 600 F.3d
171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d

Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).  In so doing, the Court is guided by the body of decisional law that has developed under Federal Rule of Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also Leyse v. Bank of Am., N.A., No. 09 Civ. 7654, 2010 WL 2382400, at *1 (S.D.N.Y. June 14, 2010).

In the Complaint, the plaintiffs allege that this Court has subject matter jurisdiction over this action solely on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  Compl. ¶ 11. However, there is no diversity between the parties "where on one side there are citizens and aliens and on the opposite side there are only aliens."  Universal Licensing Corp. v. Paola del Lungo S.P.A., 293 F.3d 579, 581 (2d Cir. 2002); see also Ariel (UK) Ltd. V. Reuters Grp. PLC, No. 05 Civ. 9646, 2006 WL 3161467 (S.D.N.Y. Oct. 31, 2006).  As alleged in the Complaint, defendant Citigroup Congo and both of the plaintiffs are citizens of DR-Congo.  Compl. ¶¶ 11-13.  There is thus no diversity jurisdiction.

In their brief, the plaintiffs argued that the Court could dismiss defendant Citigroup Congo, pursuant to Federal Rule of Civil Procedure 21, in order to preserve diversity jurisdiction. See Herrick Co., Inc. v. SCS Commc'ns, Inc., 251 F.3d 315, 329 (2d Cir. 2001)(citing Newman-Green, Inc. v. Alfonzo-Larrain, 490

U.S. 826, (1989)).  The plaintiffs did not raise this argument during oral argument of the motion to dismiss, and with good reason.  Such dismissal is only permitted where, pursuant to Rule 19(b), "in equity and good conscience" the action should proceed among the existing parties rather than be dismissed.  See Curley v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 89 (2d Cir. 1990).  When determining whether a case should be dismissed in the absence of a required party, the court should consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, [by] shaping the relief, or [by] other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  As discussed in greater detail below, Citigroup Congo is unquestionably the principal defendant in this action.  Indeed, only Citigroup Congo is a proper defendant in this case with respect to the allegations in the complaint.

In cases where, as here, the plaintiffs attempt to hold a parent company liable for the actions of its subsidiary through piercing the corporate veil, the action should be dismissed if the subsidiary cannot be joined because of the critical role that the subsidiary should play in the lawsuit.  See Freeman v. N.W. Acceptance Corp., 754 F.2d 553, 559-60 (5th Cir.

1985)(where a plaintiff seeks to impose liability on a parent corporation for the actions of the subsidiary, joinder of the subsidiary is required); Glenny v. Am. Metal Climax, Inc., 494 F.2d 651, 653-654 (10th Cir. 1974)(subsidiary with interest in the litigation is indispensable despite presence of parent corporation); Hi-Tech Gaming.com Ltd. v. IGT, No. 08 cv. 00244, 2008 WL 4952208, at *6 (D. Nev. Nov. 18, 2008); see also Vedder Price Kaufman & Kammholz v. First Dynasty Mines, Ltd., No. 01 Civ. 3970, 2001 WL 1190996, at *3 (S.D.N.Y. Oct. 9, 2001); Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991).

This case concerns the alleged improper activities of Citigroup Congo in allegedly breaching its contracts with the plaintiffs.  There is no plausible way that any judgment would not directly affect Citigroup Congo and there is no plausible way to fashion a judgment to minimize the effect on Citigroup Congo.  No judgment in the absence of Citigroup Congo would be adequate.  See Glenny, 494 F.2d at 654.  Moreover, the plaintiffs have an obvious alternative remedy to seek relief from the primary defendant, namely a suit against Citigroup Congo in DR-Congo where the allegedly wrongful activities occurred and where Citigroup Congo is located.  Accordingly, the Court cannot dismiss Citigroup Congo in an effort to preserve its diversity jurisdiction.

In their brief in opposition to the motion to dismiss, the plaintiffs raise for the first time the argument that the Court has original subject matter jurisdiction over this dispute under the "Edge Act," 12 U.S.C. § 632, which provides:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the law of the United States shall be a party, arising out of transactions involving international or foreign banking, . . . or out of any other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in . . . foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits.

Id. The plaintiffs argue that this provision vests the Court with jurisdiction over this dispute because Citibank is a nationally chartered bank.

However, Edge Act jurisdiction is not proper in this case. In order to find jurisdiction under the Edge Act, a court must be satisfied that a plaintiff's claims "really involve[] a banking arrangement between a federally chartered bank and a foreign party." Lazard Freres & Co. v. First Nat'l Bank of Md., No. 91 Civ. 0628, 1991 WL 221087, at *2 (S.D.N.Y. Oct. 15, 1991). Edge Act jurisdiction will not lie "merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties." Bank of N.Y. v. Bank of Am., 861 F. Supp. 225, 232 (S.D.N.Y. 1994)

(internal quotation marks and citation omitted).  Jurisdiction under the Edge Act "will lie only if [a national bank defendant] has potential liability to the plaintiff."  Papadopoulos v. Chase Manhattan Bank, N.A., 791 F. Supp. 72, 74 n.4 (S.D.N.Y. 1990) (granting motion to dismiss for lack of subject matter jurisdiction).  Here, the plaintiffs have failed to meet their burden of establishing the subject matter jurisdiction of this Court by a preponderance of the evidence, because the uncontroverted evidence indicates that Citibank is not potentially liable to the plaintiffs.

The only claims brought by the plaintiffs are for breach of contract.  The parties have agreed that New York law applies to the breach of contract claim and have cited only New York law with respect to this claim. The Court can accept that agreement as to applicable law.  See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 137 (2d Cir. 1991); Interstate Foods, Inc. v. Lehmann, 06 Civ. 13469, 2009 WL 4042774, at *2 (S.D.N.Y. Nov. 23, 2009).  In order to plead a claim for breach of contract in New York, a plaintiff must allege: "(1) formation of a contract between the parties; (2) performance by plaintiff; (3) defendants' failure to perform; and (4) resulting damage." Castorino v. Citibank, N.A., No. 07 Civ. 10606, 2008 WL 4114482, at *2 (S.D.N.Y. Dec. 5, 2008)(internal quotations omitted).  To maintain such a claim, a

plaintiff must allege that the defendant was a party to the contract at issue.  See Leber Assocs., LLC v. Entm't Grp. Fund, Inc., No. 00 Civ. 3759, 2003 WL 21750211, at *15-16 (S.D.N.Y. July 29, 2003).  The plaintiffs allege simply that they entered into banking contracts with the defendants, without differentiating between them.  Compl. ¶¶ 36-37.  However, account statements attached as exhibits to the Complaint indicate that the plaintiffs' accounts were held by Citigroup Congo alone.  See Compl. Exs. B & C.[1]  Accordingly, the plaintiffs have failed to establish a contractual relationship between Citibank and the plaintiffs by a preponderance of the evidence.

The plaintiffs argue that, as an alternative to direct liability, Citibank may be held liable for the wrongful acts of its subsidiary on a theory of corporate veil-piercing.  The remedy of veil-piercing requires a showing (1) that "'the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted

---

[1] The plaintiffs argue that "[i]t is well settled that a home office, here Citibank, is liable when its foreign branch closes or wrongfully refuses to return a deposit."  Mem. of L. in Opposition ("Mem. Opp.") at 7.  However, it is not even alleged that Citigroup Congo is a branch of Citibank; rather, all parties agree that it is a subsidiary corporation.  See Compl. ¶ 11(c).  Accordingly, the cases cited by the plaintiffs for the proposition that a bank may be held liable for the wrongful acts of its branch offices abroad are inapposite.

in plaintiff's injury.'" Novak v. Scarborough Alliance Corp.,
481 F. Supp. 2d 289, 293 (S.D.N.Y. 2007) (quoting Morris v. N.Y.
State Dep't of Taxation & Fin., 623 N.E.2d 1157 (N.Y. 1993)).
Determining whether a parent corporation completely dominated a
subsidiary is a fact-specific inquiry, and courts considering
whether to pierce the corporate veil consider a number of
factors, including:

> (1) disregard of corporate formalities; (2) inadequate
> capitalization; (3) intermingling of funds; (4)
> overlap in ownership, officers, directors, and
> personnel; (5) common office space, address and
> telephone numbers of corporate entities; (6) the
> degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the
> entities are at arms length; (8) whether the
> corporations are treated as independent profit
> centers; (9) payment or guarantee of the corporation's
> debts by the dominating entity; and (10) intermingling
> of property between the entities.

Oppenheimer & Co. v. Deutsche Bank AG, No. 09 Civ. 8154, 2010 WL
743915, at *4 (S.D.N.Y. Mar. 2, 2010).

Disregard of the corporate form is warranted only in
"extraordinary circumstances," and conclusory allegations of
dominance and control will not suffice to defeat a motion to
dismiss. See EED Holdings v. Palmer Johnson Acquisition Corp.,
228 F.R.D. 508, 511-12 (S.D.N.Y. 2005). Moreover, as the
Supreme Court has noted, "it is hornbook law that the exercise
of the control which stock ownership gives to the stockholders
. . . will not create liability beyond the assets of the

subsidiary." United States v. Bestfoods, 524 U.S. 51, 61-62
(1998) (internal quotation marks and citation omitted).  For
these purposes, "control" includes "the election of directors,
the making of by-laws, and the doing of all other acts incident
to the legal status of stockholders.  Nor will duplication of
some or all of the directors or executive officers be fatal."
Id. at 62(internal quotation marks and citation omitted).
Indeed, the Court of Appeals for the Second Circuit has found
piercing the veil of a corporate subsidiary to be unwarranted
where the parent "incorporate[s the subsidiary] into its own
organizational and decision-making structure." Thomson-CSF,
S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 778 (2d Cir. 1995).

The majority of the allegations in the Complaint with
respect to Citibank's alleged domination of Citigroup Congo are
conclusory.  For example, the Complaint alleges that: Citigroup
Congo was formed by Citigroup and Citibank for the sole purpose
of seeking to limit its liability for and carrying out its
illegal activities in the DR-Congo, Compl. ¶ 19; Citigroup Congo
has "no independence in its operations and operates[] under the
direct dominion and control of Defendants Citigroup and
Citibank," Compl. ¶¶ 28, 35; Citigroup Congo is "a shield by
which Citigroup and Citibank seek to deflect liability," in
misuse of the corporate form, Compl. ¶ 28; and Citigroup Congo
took the actions that underlie the plaintiffs' claims "at the

13

behest of," "on the authority of," or "at the direction of" Citigroup and Citibank, Compl. ¶¶ 9, 19.  These bare assertions, offered without support or elaboration, are entitled to no weight.

The plaintiffs also allege that the defendants "do not emphasize independence in their corporate structure or actions," Compl. ¶ 23, and operate as "an integrated and cohesive whole," Compl. ¶ 35; and that Citibank operates its foreign offices as if they were branches, Compl. ¶¶ 33-34, and exercises plenary control under its bylaws over certain aspects of the operations of its branches in foreign countries, Compl. ¶¶ 33-34.  They further allege that "Defendant Citigroup Congo is supervised by two officers appointed by Defendant Citigroup and managed by individuals appointed by Citibank's Board of Directors, and that "[t]hese individuals are directly responsible for the supervision of . . . Citigroup Congo's employees."  Compl. ¶ 20. These allegations fall short of what is required for the plaintiffs to sustain their burden on a motion under Rule 12(b)(1).  They allege, in essence, that Citibank exercises the degree of control over Citigroup Congo that would be expected of a corporate parent.  Notably, they do not allege that Citigroup Congo failed to observe corporate formalities; that it was inadequately capitalized; that its funds or property were intermingled with those of Citibank; that it did not have

discretion to carry out its corporate affairs; that it did not transact with Citibank at arms' length; that Citibank paid or guaranteed its debts; or any of the other factors that might warrant a finding that Citigroup Congo was a mere alter ego of Citibank, and that its corporate form should thus be disregarded.  See Oppenheimer, 2010 WL 743915, at *4.  To the contrary, the only evidence before the Court indicates that Citigroup Congo maintains separate corporate formalities, including its own board of directors, officers and management, and its own books and records, see Declaration of Michel Losembe ("Losembe Decl.") ¶ 6 & Exs. 1 & 2, and that it was independently capitalized, Losembe Decl. ¶ 6 & Ex. 2.  Moreover, there are no plausible factual allegations that any control over Citigroup Congo by Citibank was used to commit a fraud or wrong against the plaintiffs.

The plaintiffs have failed to show, by a preponderance of the evidence, that Citibank is potentially liable to the plaintiffs in this breach of contract action.  Accordingly, the Edge Act does not confer subject matter jurisdiction over the suit in this Court.  Because the plaintiffs have failed to demonstrate any ground for subject matter jurisdiction, the Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

### III.

While the complaint should be dismissed for lack of subject matter jurisdiction, the defendants have also moved to dismiss each defendant on individual grounds. The defendants have moved to dismiss the Complaint against Citigroup Congo for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and Citigroup and Citibank for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction.  Id.

"Personal jurisdiction over a defendant in a diversity action in the United States District Court for the Southern District of New York is determined by reference to the relevant jurisdictional statutes of the State of New York."  Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983).

Similarly, where the underlying action is based on a federal statute, the district court applies state personal jurisdiction rules if the federal statute does not specifically provide for national service of process, and the Edge Act does not.  See Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104-05 (1987)); see also Monroy v. Citibank, N.A., No. 84 Civ. 1040, 1985 U.S. Dist. LEXIS 18663, at *9-13 (S.D.N.Y. June 21, 1985) (applying New York personal jurisdiction rules to action brought under the Edge Act).

In this case, the plaintiffs argue that the Court has personal jurisdiction over Citigroup Congo because it committed acts within the scope of subsection (a)(1) of New York's long-arm statute, New York Civil Practice Law and Rules ("CPLR") § 302.  Under Section 302(a)(1), the courts of New York have jurisdiction over a foreign defendant if it "transacts any business" in New York and its "transaction of business in New York . . . bears a substantial relationship to the transaction out of which the . . . cause of action arose."  Beacon, 715 F.2d at 764 (internal quotation marks omitted).  Finding jurisdiction under Section 302(a)(1) requires "a strong nexus" and "a direct relation" between the cause of action and the in-state conduct. Id.

The plaintiffs have failed to allege sufficiently that this
Court has personal jurisdiction over Citigroup Congo under CPLR
§ 302(a)(1).  The plaintiffs argue that Citigroup Congo
transacted business in New York by employing correspondent bank
accounts in New York for the purpose of converting Congolese
Francs to United States dollars.  However, as the plaintiffs
acknowledge, merely maintaining correspondent bank accounts in
New York is not sufficient to establish personal jurisdiction.
See Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d
736, 762 (S.D.N.Y. 2004).  Rather, the plaintiffs must allege a
"direct" and "substantial" connection between those bank
accounts and the wrongful conduct that forms the basis of their
cause of action – namely, Citigroup Congo's alleged wrongful
withdrawal of funds from the plaintiffs' accounts.  The
plaintiffs have wholly failed to allege such a connection.[2]

---

[2] The cases cited by the plaintiffs are distinguishable on this
basis.  In Correspondent Servs. v. J.V.W. Invs. Ltd., 120 F.
Supp. 2d 401 (S.D.N.Y. 2000), a third-party plaintiff
corporation formed in the Dominican Republic alleged that a
Bahamian bank made unauthorized securities purchases with the
corporation's money.  Id. at 405.  The district court asserted
jurisdiction over the bank pursuant to C.P.L.R. § 302(a)(1)
because the bank made the unauthorized purchases and delivered
the securities using the correspondent bank account in New York.
Id. at 404-05.  There was thus a direct and substantial
connection between the wrongful conduct alleged – the
unauthorized purchase of securities – and the bank account.
Similarly, in Dale v. Banque SCS Alliance S.A., No. 02 Civ.
3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005), the court found
personal jurisdiction over a foreign bank where the bank had

The plaintiffs also argue that "the decision to withdraw the funds from plaintiffs' accounts and the decision to seize the accounts was made by Citigroup and Citibank and was carried out by their agent Citigroup Congo," and that this relationship is sufficient to establish the in personam jurisdiction of the Court over Citigroup Congo.  Mem. Opp. at 9.  However, the New York long-arm statute "does not permit the acts of a principal to be imputed to a foreign agent to confer jurisdiction over the agent."  See Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995); see also CPLR § 302(a). Accordingly, the Court lacks jurisdiction over defendant Citigroup Congo in this case.

**B.**

Citibank and Citigroup move to dismiss the claim against them pursuant to Rule 12(b)(6).  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented

---

used its correspondent bank accounts to launder money.  Id. at *1.  There is no such allegation here.

at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Mallet v. Johnson, No. 09 Civ. 8430, 2011 WL 2652570, at *1 (S.D.N.Y. July 7, 2011).

As stated above, although the plaintiffs allege they entered into banking contracts generally "with the defendants," the documents attached to the complaint clearly indicate the plaintiffs' accounts were held solely by Citigroup Congo. See Compl. Exs. B & C. Therefore, the plaintiffs have failed adequately to state a claim of direct liability of Citigroup or Citibank for breach of contract. Similarly, the allegations contained in the plaintiff's complaint do not support the

plaintiff's veil-piercing theory.[3]   The complaint contains only conclusory allegations of Citigroup Congo's domination by Citibank, and is devoid of any allegations that the alleged relationship between Citigroup and/or Citibank and Citigroup Congo was used to commit fraud.   The complaint is therefore facially insufficient to state a claim based on veil-piercing. See Apex Mar. Co., Inc. v. OHM Enters., Inc, No. 10 Civ. 8119, 2011 WL 1226377, at *3 (S.D.N.Y. Mar. 31, 2011)("[p]urely conclusory allegations cannot suffice to state a claim based on veil-piercing").[4]

---

[3] On a motion to dismiss under Rule 12(b)(6), a court generally cannot consider affidavits unless it transforms the motion into a motion for summary judgment, which the Court declines to do.   See Rule 12(d).   Accordingly, the defendants' affidavits are not considered for the purposes of their motion to dismiss pursuant to Rule 12(b)(6).

[4] It is unnecessary to reach the defendants' argument of forum non conveniens. As the defendants conceded at argument on the motion, forum non conveniens would apply only if the Court dismissed Citigroup and Citibank and was otherwise prepared to allow the claim against Citigroup Congo to proceed.

## CONCLUSION

The Court has carefully considered all of the parties' arguments, and to the extent not expressly addressed, they are either moot or without merit.  Accordingly, the motion to dismiss is **granted**.  The Clerk is directed to enter Judgment dismissing the second amended complaint and closing this case. The Clerk is also directed to close **Docket No. 28**.

**SO ORDERED.**

Dated:    New York, New York
          September /3, 2011

                                          John G. Koeltl
                                   United States District Judge